JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant, Nelly Molina, appeals from her convictions for drug trafficking, possession of drugs, and possession of criminal tools. She asserts that the court erred by denying her motion to suppress evidence obtained as a result of the warrantless search of her home; the court plainly erred by admitting hearsay evidence at trial; the court erred by denying her motion for acquittal of the drug trafficking charge; her convictions are against the manifest weight of the evidence; and the court erred by imposing sentence on appellant in excess of the statutory minimum. We find no error in the proceedings below and affirm the common pleas court's judgment.
 Facts and Proceedings Below {¶ 2} Appellant was charged in four counts of a fifteen-count indictment filed April 14, 2003. She was charged with drug trafficking, possession of drugs, possession of criminal tools, and tampering with evidence. She entered a not guilty plea at her arraignment on April 28, 2003.
 {¶ 3} On June 13, 2003, appellant filed a motion to suppress all evidence obtained from a search of her home. A hearing was held on this motion on June 30, 2003. At the suppression hearing, Cleveland police detective Edwin Cuadra testified that on November 14, 2002, he arranged to purchase fifty bags of heroin from a man who identified himself as "Ramon." The buy was to take place at East 55th Street and St. Clair Avenue, next to a Wendy's restaurant. When Ramon arrived at that location, he reported that he brought only twenty bags of heroin with him, and "said he had to go back to the house and get the rest, which was 30 bags."
 {¶ 4} "Ramon," later identified as Carlos Santos, was arrested before the transaction took place. Twenty-six bags of heroin were recovered from his person.
 {¶ 5} Detective Cuadra reported that he had purchased heroin from Santos twice before. Surveillance revealed that Santos returned to 5416 Homer Avenue after making each sale. He went to the back of the house. A short time later, he came back out and "walked up the street making other deals." Santos "would always go back there" after making sales, leading Detective Cuadra to believe that "that was the stash house."
 {¶ 6} At the time of his arrest, Santos informed the police that there were 20 grams more of heroin at the house, which was only two blocks away. Officers were concerned that "they may try to get rid of it." They went to the house, secured a male in the front of the house, then went to the back apartment. They announced themselves and entered. They found a Ramon Rebollido in the bathroom and the defendant, Nelly Molina, in the living room or dining room. They observed twenty bags of heroin in the toilet and another ten bags "in plain view" on a shelf. Police advised everyone present of their rights and went to secure a search warrant. No further search took place at that time.
 {¶ 7} Detective Cuadra said that he did not obtain a warrant before entering the apartment because he was concerned that the drugs would be destroyed "if information got back to them that we arrested [Santos]." On cross-examination, Cuadra admitted that he did not know that anybody from the Homer Avenue address knew of Santos's arrest.
 {¶ 8} Detective James Cudo testified that police surveillance of Santos before the arranged buy on November 14 did not reveal which apartment Santos was entering and leaving. There were four doors, and he did not know which door Santos used. For this reason, Cudo did not obtain a search warrant for the premises before Santos's arrest. After his arrest, Santos drew a diagram for police, showing them which door to enter.
 {¶ 9} At the conclusion of the hearing, the court found that exigent circumstances justified the warrantless entry and limited search of the premises, and denied the motion to suppress. This ruling was recorded in an entry filed July 3, 2003.
 {¶ 10} The case proceeded to a bench trial on September 8, 2003. At trial, the court heard the testimony of Detectives Ahmad Pruitt, Keith Murphy, and James Cudo. The testimony showed that in July 2002, police received an anonymous tip regarding drug sales by a "Ramon" in the area of East 55th Street and St. Clair Avenue using a specific cellular telephone number. The subscriber for that number was appellant. Police called the telephone number and arranged a controlled purchase from a Pedro Castro, which took place in the area of 6315 Lausche. Castro and appellant's daughter, Jamilia Fernandez, were the tenants of an apartment at 6315 Lausche; that address was also the billing address for the cellular telephone owned by appellant.
 {¶ 11} Police received another anonymous tip on October 20, 2002 regarding heroin sales by Ramon Rebollido. The tip gave an address of 5416 Homer, described a vehicle, a blue minivan, and gave a cellular telephone number which was different from the one listed in the July complaint. Police surveillance demonstrated that the vehicles parked at the premises included a blue minivan which was registered to appellant. Appellant was also the subscriber for the cellular telephone number reported by the tip.
 {¶ 12} Police attempts to call the cellular telephone listed in the October tip were not answered. Police then called the number listed in the July tip.[1] Police spoke with a male named "Ramon" and arranged a controlled buy of 10 packets of heroin on November 6, 2002. On November 12, 2002, a second controlled buy of 20 packets of heroin was arranged. Undercover officers were approached by two males, later identified as Carlos Santos and Ramon Rebollido, in a blue minivan with a temporary tag. This vehicle was titled to appellant.
 {¶ 13} Police arranged a third controlled buy of 50 packets of heroin on November 14, 2002. The seller, later identified as Carlos Santos, was arrested before the transaction took place. Police then proceeded to 5416 Homer, where they secured the premises. Appellant was present there, as well as Ramon Rebollido. Nine packets of heroin were recovered from the living room, five to ten feet away from appellant. An additional twenty packets were in a toilet in a bathroom where Ramon Rebollido was found. A subsequent search pursuant to a warrant revealed additional heroin in a rice bin in the kitchen.
 {¶ 14} At the close of the state's case, the court dismissed the charge of tampering with evidence. The court found appellant guilty of the three remaining counts.[2] Thereafter, the court sentenced appellant to four years' imprisonment on each of the drug trafficking and drug possession charges, and six months' imprisonment on the charge of possession of criminal tools, all sentences to run concurrently. In addition, a fine of $7,500 was imposed on appellant and her driver's license was suspended for five years.
 Law and Analysis {¶ 15} In her first assignment of error, appellant argues that the court erred by denying her motion to suppress evidence seized as a result of the search of the apartment. We agree with the trial court that exigent circumstances justified immediate entry onto the premises and a limited search to prevent the destruction of evidence.
 {¶ 16} The fourth amendment unequivocally protects the right of the people to be secure in their homes, and to be free from unreasonable government intrusions there. Absent exigent circumstances, a warrantless search or seizure in a home is per se unreasonable. Payton v. New York (1980), 445 U.S. 573, 590.
 {¶ 17} One exigent circumstance which will justify a warrantless search and seizure arises when there is an urgent need to prevent evidence from being lost or destroyed. "When police officers seek to rely on this exception in justifying a warrantless entry, they must show an objectively reasonable basis for concluding that the loss or destruction of evidence is imminent." United States v. Sangineto-Miranda (6th Cir. 1988), 859 F.2d 1501, 1512. "[A] police officer can show an objectively reasonable belief that contraband is being, or will be, destroyed within a residence if he can demonstrate: 1) a reasonable belief that third parties are inside the dwelling; and 2) a reasonable belief that these third parties may soon become aware the police are on their trail, so that the destruction of evidence would be in order." Id.
 {¶ 18} In this case, the evidence supports the conclusion that the police reasonably believed that third parties were at the premises and would soon become aware that a search was imminent. First, police knew that Ramon Rebollido lived at the premises. They also learned from Santos that he was going to go back "to the old man," presumably Rebollido, to obtain the remaining heroin for the transaction. Therefore, the police reasonably believed someone was at the premises with contraband Second, police knew that Santos always returned to the house after a drug transaction. Even if the residents of the apartment were unaware that Santos had to return for more heroin for the current transaction, they would have been expecting him and their suspicions would be aroused when he failed to appear. Finally, Santos was arrested only two blocks away from the apartment at a busy intersection; news of the arrest could reasonably be expected to travel back to the apartment quickly. Therefore, the police reasonably could have believed that evidence would be destroyed before they could obtain a warrant. They could not have obtained a warrant before Santos's arrest, because they did not know which of the four apartments in the building Santos traveled to and from. The entry and limited search of the premises was reasonable and justified by the exigent circumstances. The first assignment of error is overruled.
 {¶ 19} Second, appellant argues that the court erred by allowing the state to present hearsay evidence at trial. Although she did not object to this testimony at trial, she now asserts that the admission of this testimony was plainly erroneous.
 {¶ 20} The testimony about which appellant complains concerns tips the police received regarding drug sales at 5416 Homer Avenue, which included a telephone number, a description of a blue minivan and the name Ramon Rebollido. Police investigation later revealed that the minivan and the telephone were registered in appellant's name. In addition, the telephone records listed appellant's address as 5416 Homer Avenue.
 {¶ 21} The evidence of the tip was not introduced to prove the truth of the matter asserted, that a Ramon Rebollido was selling drugs from the premises. It was introduced to explain how the police began to investigate these premises. More important, the tip itself did not implicate appellant. Appellant was only implicated by police research based on that information. Finally, this case was tried to the court, not to a jury. We presume that "`* * * in a bench trial in a criminal case the court considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary.'" State v. Fautenberry, 72 Ohio St.3d 435, 439,1995-Ohio-209 (citations omitted). Therefore, we overrule the second assigned error.
 {¶ 22} Appellant thirdly contends that the evidence was insufficient to support her conviction for trafficking in drugs. She asserts that there is no evidence that she participated in or did anything to further the sale or distribution of heroin. R.C.2925.03 defines drug trafficking as follows:
 {¶ 23} "(A) No person shall knowingly do any of the following:
 {¶ 24} "(1) Sell or offer to sell a controlled substance.
 {¶ 25} "(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person."
 {¶ 26} Ohio's complicity statute, R.C. 2923.03, provides in part that "no person, acting with the kind of culpability required for the commission of an offense, shall * * * aid or abet another in committing the offense." R.C. 2923.03(A)(2). The terms "aid" and "abet," are "familiar and simple legal terms. To aid is to assist. To abet is to incite or encourage." State v.Sims (1983), 10 Ohio App.3d 56, 58. "Evidence of aiding and abetting another in the commission of crime may be demonstrated by both direct and circumstantial evidence. Thus, `[p]articipation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.'"State v. Cartellone (1981), 3 Ohio App.3d 145,150, 150 (quoting State v. Pruett [1971], 28 Ohio App.2d 29,34).
 {¶ 27} The evidence showed that appellant and Ramon Rebollido resided in the apartment from which the heroin was distributed. Nine packets of heroin, packaged for sale, were in plain view on a shelf a few feet away from her when the police entered the apartment. In addition, a sifter with heroin residue was on the dining table, also in plain view. The casual and pervasive presence of heroin and tools of trafficking in the apartment, as well as Santos' frequent trips to and from the apartment, provided ample evidence that appellant must have been aware that her apartment was being used for drug trafficking. More important, there was evidence that appellant aided Rebollido and Santos in trafficking. She was the title owner of a vehicle which the police saw Santos and Rebollido use for a drug sale. She was the subscriber for two cellular telephones, one of which the police used to arrange purchases. Though there is no direct evidence that appellant was aware that the van and the telephones were being used to traffick drugs, the factfinder could infer such knowledge from the level of drug activity coming from the apartment and the fact that the one telephone number was consistently used to arrange the drug transactions. Therefore, we find there was sufficient evidence to support appellant's conviction of trafficking.
 {¶ 28} Appellant's fourth assignment of error asserts that her convictions for drug trafficking and drug possession contravened the manifest weight of the evidence. She urges that the evidence that she constructively possessed the heroin was weak, and that the state failed to show that she financially benefitted from the transactions. She claims "[t]he state's whole theory of her involvement is based on the fact that she lived in the same house as Ramon therefore she must be guilty."
 {¶ 29} While most of the evidence in this case was circumstantial, circumstantial evidence can support a conviction as well as direct evidence. Appellant shared with Ramon an apartment which was no larger than the courtroom in which the trial took place. It would have been difficult, if not impossible, for appellant not to have been aware of any activity going on in the apartment. The presence of nine packets of heroin on a shelf just a few feet away from appellant and in plain view constitutes sufficient circumstantial evidence that appellant constructively possessed the heroin. See, e.g., Statev. Richardson (Nov. 13, 1997), Cuyahoga App. No. 71626. Santos' frequent visits to the apartment and his regular use of her cellular telephone and her minivan to arrange and execute drug sales provides circumstantial evidence that she aided drug trafficking. We cannot say any manifest miscarriage of justice occurred when the court found appellant guilty of each of these charges.
 {¶ 30} Finally, appellant argues that the court erred by imposing a sentence on her greater than the statutory minimum. Pursuant to R.C. 2929.14(B).
 {¶ 31} "Except as provided in division (C), (D)(1), (D)(2), (D)(3), or (G) of this section, in section 2907.02 of the Revised Code, or in Chapter 2925. of the Revised Code, if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:
 {¶ 32} "(1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.
 {¶ 33} "(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 34} Appellant claims that the court erred by failing to consider imposing the minimum sentence first, then deciding to depart based upon one or both of the statutorily permitted reasons. We disagree. The court specifically stated that "you face mandatory minimum two year sentence on this case. I find that two years would demean the seriousness of your involvement in this drug trafficking operation, therefore, on count 10, trafficking in drugs I'm going to sentence you to four years at the Ohio Reformatory for Women, and count 11 I'm sentencing you to four years at the Ohio Reformatory for Women. Count 12, possession of criminal tools, you'll receive six months at the Ohio Reformatory for Women." It is clear from the record that the court considered imposing the minimum term and decided to impose a longer sentence based on one of the two statutorily sanctioned reasons. State v. Edmonson (1999), 86 Ohio St.3d 324, 326. Therefore, we overrule the fifth assignment of error.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, P.J. and Cooney, J. Concur.
[1] The subscriber for this number changed from appellant to her son, Ricardo Troche some time before November 12, 2002. It was not clear whether appellant or Troche was the subscriber at the time of the November 6 purchase.
[2] The court found appellant not guilty of a RICO charge "as charged in count sixteen." However, we have found no count sixteen in the record.