[Cite as *State v. Blackshear*, 2011-Ohio-1806.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 95424

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## NIGEL BLACKSHEAR

DEFENDANT-APPELLANT

---

## JUDGMENT:
## REVERSED AND VACATED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-533661

**BEFORE:**    Sweeney, J., Boyle, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:**    April 14, 2011

**ATTORNEY FOR APPELLANT**

Valentine Shurowliew, Esq.
Stanley L. Josselson Co., L.P.A.
The Marion Building, Suite 411
1276 West Third Street
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

William D. Mason, Esq.
Cuyahoga County Prosecutor
By: Marc D. Bullard, Esq.
Assistant County Prosecutor
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

JAMES J. SWEENEY, J.:

{¶ 1}   Defendant-appellant Nigel Blackshear ("defendant") appeals his convictions for drug trafficking, drug possession, and possessing criminal tools.   After reviewing the facts of the case and pertinent law, we reverse defendant's convictions and vacate his sentence.

{¶ 2}   On January 12, 2010, detectives from the Cleveland Police Narcotics Unit were inspecting packages at the Federal Express ("FedEx") facility in Bedford Heights, Ohio, looking for boxes they suspected may contain drugs.   They spotted a package that had the following indicators of being a drug shipment:   it was heavily taped to prevent odor from

escaping; it was shipped priority overnight from Las Vegas, a known narcotics source city; the shipping costs were paid in cash to eliminate identifying credit card information; the label was handwritten; the two listed phone numbers were disconnected; and the recipient's name, Jarrett Smith, did not match the delivery address, 991 Helmsdale Ave., in Cleveland Heights ("Helmsdale").

{¶ 3} The police brought in a K-9 unit and lined up five to six boxes including the box with the Helmsdale delivery address. Daisy, the trained narcotics dog, identified the suspect package as containing drugs. The police got a warrant to open the box, which contained 3669.2 grams of marijuana, packaged in several heat sealed bags. The police inserted a monitoring device into the package and resealed the box. An anticipatory search warrant was issued for the Helmsdale house. Cleveland Police Detective Joseph Bovenzi posed as a FedEx delivery man and planned a controlled delivery of the package to Helmsdale, with other detectives stationed nearby to conduct surveillance. Defendant lives at the Helmsdale address with his father, who owns the house. At approximately 2:00 p.m., Det. Bovenzi knocked on the Helmsdale door. Defendant's father was upstairs sleeping and defendant answered the door.

{¶ 4} According to Det. Bovenzi, he asked if defendant was waiting for a package, and defendant stated that he was. Defendant accepted the package and signed his name to the log sheet, which was attached to a clipboard that was sitting on top of the box. Det.

Bovenzi could not recall whether he asked defendant if he was the recipient (Jarrett Smith), although this is something he usually does during a controlled delivery. After defendant took the package, Det. Bovenzi left, and the surveillance team began to watch the Helmsdale house.

{¶ 5} According to defendant, however, the undercover detective did not say a word during the controlled delivery. When defendant opened the door, the detective presented defendant with a clipboard balanced on top of a package. Defendant could not see the label on the box. Defendant said, "Is this for me?" The detective did not reply, but he tilted the box and clipboard in front of defendant for his signature. Defendant signed the paper on the clipboard and the detective handed him the package. Defendant recalled that, because it was very cold outside and he did not want heat from the space heaters to escape, the delivery was quick.

{¶ 6} Defendant put the box in front of the cocktail table near the door, because that is where he and his father keep the mail. Defendant was not expecting a delivery and he assumed the package was for his father, who regularly has items delivered to the house. Defendant never looked at the label on the package. After the delivery, defendant resumed playing video games with his friend.

{¶ 7} The police waited for approximately two hours with no activity at Helmsdale before executing the search warrant for the house. Defendant and another male were in the living room at the time, playing video games. The package, which was unopened, was near

the front door, approximately six to eight feet from where defendant was sitting. A small digital scale with marijuana residue was located within defendant's reach. The police also recovered a cell phone, a suspected marijuana "blunt," and baggie tear-offs, which are commonly used to package small amounts of marijuana. Subsequent testing showed the "blunt" contained only tobacco and there was "insufficient material for analysis" of the baggies. Additionally, police recovered a second scale from the attic of the house, which tested negative for drugs.

{¶ 8} On February 17, 2010, defendant was indicted for drug trafficking, drug possession, and possessing criminal tools. On June 14, 2010, a jury found defendant guilty of all three charges. On June 16, 2010, the court merged the trafficking and possession convictions and sentenced defendant to two years in prison for drug trafficking and six months in prison for possessing criminal tools, to run concurrently, for an aggregate sentence of two years.

{¶ 9} Defendant appeals and raises two assignments of error that we will review together.

{¶ 10} "I. The trial court's decision finding Nigel Blackshear guilty beyond a reasonable doubt is not supported by sufficient evidence and is against the manifest weight of the evidence."

{¶ 11} "II. The trial court erred in not granting defendant's Rule 29 motion to

dismiss."

{¶ 12} When reviewing sufficiency of the evidence, an appellate court must determine, "after viewing the evidence in a light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492.

{¶ 13} The proper test for an appellate court reviewing a manifest weight of the evidence claim is as follows:

{¶ 14} "The appellate court sits as the 'thirteenth juror' and, reviewing the entire record, weighs all the reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541.

{¶ 15} Defendant was convicted of the following offenses: drug trafficking in violation of R.C. 2925.03(A)(2), which states that "[n]o person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person"; drug possession in violation of R.C. 2925.11(A), which states that "[n]o person shall knowingly obtain, possess, or use a controlled substance"; and possessing criminal tools in violation of R.C. 2923.24(A), which

states that "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with the purpose to use it criminally."

{¶ 16} Defendant's argument in the instant case is that he did not "knowingly possess" the marijuana. R.C. 2901.22(B) states that a "person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

{¶ 17} Possession is defined in R.C. 2925.01(K) as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." In *State v. Haynes* (1971), 25 Ohio St.2d 264, 270, 267 N.E.2d 787, the Ohio Supreme Court held the following: "When narcotics are discovered in the general living area of jointly occupied premises, one can only speculate as to which of the joint occupiers have possession of the narcotics. In other words, no inference of guilt in relation to any specific tenant may be drawn from the mere fact of the presence of narcotics on the premises."

{¶ 18} Possession of a certain amount of drugs may lead to a reasonable conclusion that the drugs are for the purpose of sale rather than personal consumption. *State v. Conner*, Cuyahoga App. No. 84073, 2005-Ohio-1971, ¶57. Pursuant to R.C. 2925.03(C)(3)(d), trafficking between 1,000 and 5,000 grams of marijuana is a third degree felony. Thus,

defendant argues that if he was not aware that the package "probably" contained marijuana, he could not be convicted of drug possession or trafficking.

{¶ 19} In the instant case, the court relied on *State v. Smith* (June 15, 1995), Cuyahoga App. No. 67524 and instructed the jury regarding "deliberate ignorance" or "willful blindness" as related to defendant's state of mind: "You can further find the defendant acted knowingly if he deliberately closed his eyes to what he had reason to believe [were] the facts."

{¶ 20} In *Smith*, the police made a controlled delivery of a package they knew contained drugs to Smith's house. The package was addressed to Michelle Smith; the defendant's name is Andrea Michelle Smith, and Michelle is "the name only those in her family used." Smith signed her name for the package. Pursuant to a warrant, the police entered Smith's house and found the unopened package on the back stairs.

{¶ 21} Smith was indicted for drug possession, and during the jury trial, her testimony about the details of the controlled delivery was inconsistent with prior statements she made to the police. Smith told the police officers that she placed the package on the back stairs because she was cooking fish at the time, and she did not want to get the package greasy. However, Smith testified at trial that she asked her boyfriend to put the package on the back stairs because he was going out with the dog and the package was heavy. Additionally, Smith told the police that she thought the package was from the Home Shopping Club. However, she testified that on the day the package was delivered she was expecting phones

she ordered from General Electric.

{¶ 22} The jury convicted Smith of drug possession. On appeal, this court affirmed Smith's conviction, finding credible evidence to support the knowledge element of the offense. The box was sent to Smith's home using her middle and last name. Smith's trial testimony was inconsistent with her prior statements to the police as to why the box was immediately taken to the back of the house, who placed it there, and from whom Smith was expecting a delivery. Additionally, the state proposed a theory that Smith "was a middle person in the drug operation."

{¶ 23} This court held that "[t]he State must present the facts and circumstances surrounding the delivery of the box to prove that one in [Smith's] shoes must have known that the box contained an illegal substance." Id. The court found that the "facts presented to the jury supported a finding that [Smith] may have deliberately closed her eyes to the fact that the box contained [drugs]." Id.

{¶ 24} We find the instant case distinguishable from *Smith*, because there is insufficient evidence that defendant deliberately closed his eyes to the fact that the package contained marijuana. Defendant's name was not on the package. Defendant had reason to believe the package was a typical delivery for his father. There were no inconsistencies in defendant's testimony, which was bolstered by consistent testimony from his father.

{¶ 25} Defendant testified to the following: On January 12, 2010, he was at home

playing video games with his friend Kendrick Ward whose mother is a Cleveland Police Officer. He and Kendrick sometimes smoked marijuana in the house. Defendant used the "little" scale for measuring personal-use marijuana, as well as fragrance oils, which he sells. Defendant occasionally receives packages in the mail containing the oils. The "big" scale found in the attic belonged to his father, who used to use it to weigh food portions when he found out he had diabetes ten to 12 years ago.

{¶ 26} According to defendant, he never saw the label on the package that was delivered, and he never heard of Jarrett Smith. The detective did not ask defendant if he was the recipient of the package or Jarrett Smith. Defendant signed his name for the package and set the package next to the door, assuming it was for his father. Defendant made an in-court identification of his signature on the delivery paperwork. Asked why he did not take a closer look at the box, defendant stated that the clipboard was covering it up. "My father normally gets a lot of boxes, and he collects memorabilia. Out of the 36 years that I've been staying with him, I haven't had a problem when I signed for the box. If I sign for the box, it usually [is] for him, so I didn't think it was a problem."

{¶ 27} Defendant testified that his father was asleep upstairs when the package was delivered. Defendant's father saw the package as he went out the front door to go to work and stated that he did not order anything. Defendant's father told defendant to leave the package alone and that he would look into it later.

{¶ 28} Defendant denied knowing anything about the package including that it contained drugs. Defendant further denied expecting a package that day or telling the undercover detective that he was expecting a package that day. He also denied ever dealing in drugs.

{¶ 29} Defendant's father Lawrence testified on behalf of defendant as follows:

{¶ 30} Lawrence received packages from FedEx or UPS on "numerous occasions" for two reasons. First, he is diabetic and he has hypertension and high cholesterol. His medicine is shipped to him, and sometimes this happens without notice. Second, he collects sports memorabilia as a hobby, and pieces he orders are shipped to him. He expected to receive these packages.

{¶ 31} Lawrence was unaware that a package had been delivered to the house on January 12, 2010, until he left for work, when he saw the unopened package near the end table by the front door. As Lawrence was leaving, he told defendant not to bother the package, that he would deal with it when he came back, because he was not expecting anything to be delivered.

{¶ 32} When Lawrence got back from work, he saw police officers surrounding his house. When the police questioned Lawrence, he admitted owning the house but denied knowing anything about the package other than it was delivered.

{¶ 33} Lawrence had occasionally seen his son smoke marijuana in the house, but he

could not "possibly imagine" that defendant was involved in selling drugs. Lawrence had never seen the small scale that police found in the living room and he did not know what it was used for. Lawrence testified that the scale found in the attic belonged to him. He used to use it to measure food portions for his diabetes, but he kept it in the attic now because over time he had learned how to eyeball the correct portions.

{¶ 34} This court has upheld drug possession and trafficking convictions based on *Smith* and the willful blindness doctrine in "the comparatively rare cases where there are facts that point in the direction of deliberate ignorance of criminal activity." *State v. McKoy* (Feb. 17, 2000), Cuyahoga App. No. 74763.

{¶ 35} For example, in *State v. McNeal*, Cuyahoga App. No. 91507, 2009-Ohio-3888, this court held that there is evidence of deliberate ignorance when "the defendant has his suspicions aroused but then * * * deliberately omits making inquiry in order to avoid having actual knowledge." Id. at ¶24 (internal citations omitted). In that case, there was evidence that McNeal delivered a plastic bag containing a shipment of cocaine from a supplier to an informant. According to the informant, the bag McNeal gave him was heavy because it contained a scale in addition to the drugs. He handed the scale back to McNeal and made arrangements to pay her $6000 for the drugs. Id. at ¶4-5.

{¶ 36} Evidence was presented to the jury that McNeal was a known "drug runner." The informant testified that three years prior to this transaction, he picked up a cocaine

shipment from McNeal. The transaction was done hand-to-hand and the drugs were in a brown paper bag. Id. at ¶14.

{¶ 37} McNeal admitted that she met the informant in a Blockbuster parking lot and gave him a plastic bag containing a scale and what she thought was clothing. In return, she was expecting the informant to give her $800, which she was supposed to give to the supplier. McNeal testified that the informant gave the scale back to her but did not give her the money. She met the informant later at a Drug Mart to collect the money. McNeal testified that she did not know there was cocaine in the bag. Id. at ¶7.

{¶ 38} The evidence against McNeal showed that she suspected, if not actually knew, that there were illegal drugs in the plastic bag she gave to the informant. She had delivered drugs to the informant under similar circumstances in the past, she knew that there was a scale in the bag, and she expected to receive money in exchange for the bag. See, also, *U.S. v. Rada-Solano* (C.A.5, 1980), 625 F.2d 577 (holding that the "deliberate avoidance of positive knowledge" doctrine applied to prove that the defendant knowingly possessed drugs when an acquaintance paid the defendant to bring two suitcases, with cocaine hidden behind the lining, from Colombia to Florida).

{¶ 39} In commenting on cases in which "law enforcement officers have intercepted a package containing illegal narcotics [and chose] to make a controlled delivery of that package," one Ohio court cautioned against establishing universal rules. "An individual

motivated by animosity could mail prohibited narcotics to a completely innocent and unwitting victim. Such mailing, coupled with a contemporaneous anonymous phone call would set the stage for the arrest and prosecution of a law-abiding citizen." *State v. Fabian*, Trumbull App. No. 2001-T-0080, 2002-Ohio-3152, ¶27.[1] The court further noted that "such a vindictive contrivance suggests that" the outcome of these cases should "depend largely on the factual predicate presented." Id.

{¶ 40} The facts in the instant case do not suggest that defendant's suspicions were aroused or that he deliberately avoided knowledge of the package's contents. Evidence that defendant signed for the package does not prove that he knowingly committed drug possession or drug trafficking under the circumstances of this case. Indeed, without additional evidence implicating defendant, it is just as likely that defendant's father "knowingly possessed" the package containing drugs.

{¶ 41} Defendant was accustomed to signing for packages for his father, who often received boxes in the mail. On the day in question, defendant signed for a package without looking at the shipping label. Defendant did not open the package, because he thought it was for his father. Instead, he placed the box where he usually places his father's mail, and returned to playing a video game for the next two hours, until the police arrived to search his

---

[1] The specific issue in *Fabian* was whether constructive possession could be established when the authorities removed the methamphetamine from the package and replaced it with a "dummy substance," such as flour or sugar. However, in our view, the policy concerns apply to the instant case.

house.

{¶ 42} The state failed to establish that defendant knew, or willfully avoided knowing, that the package was addressed to someone named "Jarrett Smith" or that there was anything else suspicious about this package. Det. Bovenzi did not testify that he said anything to defendant that would or should have aroused defendant's suspicions.

{¶ 43} Accordingly, there is insufficient evidence in the record that defendant had actual knowledge of the drugs or closed his eyes to criminal activity. We reverse his convictions for drug possession and drug trafficking and vacate the associated two-year prison sentence.

{¶ 44} Defendant's conviction for possessing criminal tools, on the other hand, is supported by evidence in the record that he had possession of the small scale that tested positive for marijuana residue. However, under R.C. 2923.24(C), possessing criminal tools is a first degree misdemeanor, unless the item was associated with the commission of a felony, in which case possessing criminal tools is elevated to a fifth degree felony. Defendant was convicted of, and sentenced for, a fifth degree felony regarding this offense. Given the reversal of defendant's felony convictions for drug possession and trafficking, we also reverse defendant's conviction for felony possession of criminal tools and vacate the associated six-month prison sentence.

{¶ 45} Defendant's first assignment of error is sustained, inasmuch as it challenges the

sufficiency of the evidence against him. Defendant's second assignment of error is rendered moot pursuant to App.R. 12(A)(1)(c). Defendant's convictions are reversed, his prison sentence is vacated, and this case is remanded to the trial court for further proceedings consistent with this opinion.

{¶ 46} This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.

It is, therefore, considered that said appellant recover of said appellee his costs herein.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


JAMES J. SWEENEY, JUDGE

MARY J. BOYLE, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR