[Cite as *State v. Mowler*, 2014-Ohio-831.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100019**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# MAURICE MOWLER

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-563268-B

**BEFORE:** E.T. Gallagher, J., Jones, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** March 6, 2014

**ATTORNEYS FOR APPELLANT**

G. Michael Goins
1015 West Hill Drive
Gates Mills, Ohio 44040

Reginald N. Maxton
8608 Quincy Avenue, Up
Cleveland, Ohio 44106


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:    Mollie Ann Murphy
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

{¶1} Defendant-appellant, Maurice Mowler ("Mowler"), appeals the denial of his motion to suppress and three drug-related convictions. We find no merit to the appeal and affirm.

{¶2} On May 31, 2012, Detective Michael Trombly ("Trombly") of the Cuyahoga County Sheriff's Office, and Detectives Franklin Lake ("Lake") and Edwin Cuadra ("Cuadra") of the Cleveland Police Department's Narcotics Unit were searching for contraband at a FedEx facility in Bedford Heights. They were trained to look for packages that were heavily taped, contained odor-masking substances such as coffee or mustard, or were shipped from certain well-known source states. Cuadra spotted a heavily taped package sent from someone Cuadra had intercepted contraband from in the past.

{¶3} Computer research revealed that the shipper was not associated with either the return address or the receiving address on the shipping label. The recipient's name was also not associated with the shipping address. Trombly's K-9 partner, Sam, who had been trained to scratch objects when he encountered the smell of illegal narcotics, located and scratched the package amidst numerous other packages.

{¶4} Pursuant to a search warrant, Cleveland police detectives opened the package and discovered a large bundle of marijuana inside. Cuadra removed a small piece of marijuana for testing and placed an alarm and tracking device inside the package before

resealing it. Detective Lake, disguised as a FedEx driver, delivered the package to the delivery address, 12910 Hlavin Road in Cleveland. Detective Ricardo Ruffin ("Ruffin") arrived on the street in an undercover capacity before Lake to conduct surveillance on the house prior to delivery. A man, later identified as Mowler, arrived in a purple Isuzu Trooper and parked on the street immediately behind Ruffin.

{¶5} A short time later, Detective Lake arrived at the address and delivered the package to a man, later identified as Reginald West ("West"). West placed the package on the front porch of the house. Five minutes later, a red Ford Expedition pulled into the driveway. West picked up the package, got into the front passenger seat of the Expedition, and headed eastbound on Hlavin Road toward East 131st Street. The Isuzu and undercover police cars who had been conducting surveillance followed the Expedition to an apartment complex located at 15500 Lakeshore Boulevard, a gated community.

{¶6} Upon arrival, Mowler used a key to open a gate for access to the parking lot. The Expedition and the Isuzu entered the complex followed by undercover police. Detectives Lake, Cuadra, and Ruffin stopped Mowler, who initially denied living in the complex but later allowed police to search his apartment. Detective Patrick Andrejcak ("Andrejcak") and SWAT members removed West and Tyshawn Ball ("Ball") from the Expedition. As a group, they proceeded to Mowler's apartment.

{¶7} Inside the apartment, Andrejcak's K-9 partner Daisy alerted detectives to the presence of drugs in a garbage can in the kitchen. The marijuana was hidden underneath

a bag containing regular garbage. Detectives found $9,000 in nine separate packs of $1,000 each and an additional $694 in a kitchen drawer. They also recovered a scale, packaging material, and a food saver device used to shrink wrap food or small packages.

{¶8} Mowler was charged along with codefendants West and Ball, with one count of drug trafficking, one count of drug possession, and one count of possessing criminal tools. All three counts contained forfeiture specifications pursuant to R.C. 2941.1417(A) for the money, the scale, the food saver device, and cell phones.

{¶9} Mowler filed a motion to suppress evidence of the physical items confiscated from his apartment and all statements he made to police. Following a hearing, the trial court denied the motion, and the case proceeded to trial at which time a jury found Mowler guilty on all three counts in the indictment, including the specifications. The court merged the drug trafficking and drug possession counts for sentencing, and the state elected to proceed on the drug trafficking conviction. The court sentenced Mowler to nine-months imprisonment for drug trafficking and six months for possessing criminal tools, to be served concurrently. The sentence also included three years of postrelease control. Mowler now appeals and raises two assignments of error.

## Motion to Suppress

{¶10} In the first assignment of error, Mowler argues the trial court erred in denying his motion to suppress. He contends there was insufficient evidence to support the probable cause necessary to arrest him and that all the evidence seized following his arrest was illegally obtained.

{¶11} Appellate review of a motion to suppress involves a mixed question of law and fact. "In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility." *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994). The reviewing court must accept the trial court's findings of fact in ruling on a motion to suppress if the findings are supported by competent, credible evidence. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. Accepting the facts as true, the reviewing court must then independently determine as a matter of law, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard. *Id.*

{¶12} The Fourth Amendment of the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause * * *." The Fourth Amendment is enforceable against the states through the Due Process Clause of the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

{¶13} There are, however, exceptions to the Fourth Amendment's warrant requirement. For example, a warrantless arrest is constitutionally valid if, at the time of the arrest, the facts and circumstances within the officer's knowledge were sufficient to warrant a prudent person to believe that the suspect had committed an offense. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Probable cause for a warrantless arrest exists when the officer has sufficient information, from his own

knowledge or a reliable source, to merit a reasonable belief that the accused has committed a felony. *State v. Timson*, 38 Ohio St.2d 122, 127, 311 N.E.2d 16 (1974).

{¶14} A warrantless arrest does not require the officer's absolute knowledge that a crime has been committed; it requires only a reasonable belief based on the totality of the circumstances. *Id*. Probable cause is a pliant common sense standard that requires only a showing that a probability, rather than an actual showing, of criminal activity existed. *Texas v. Brown*, 460 U.S. 730, 732, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); *Illinois v. Gates,* 462 U.S. 213, 245, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

{¶15} At the time of Mowler's arrest, police knew Mowler had watched a package of marijuana being delivered to his accomplice. Prior to delivery, Ruffin had observed Mowler seated in the Isuzu watching traffic on the street. Ruffin testified that police often observe an accomplice acting as a "lookout" during drug operations. Moments after Lake delivered the package, Ruffin observed Mowler follow West and Ball from Hlavin Road to his apartment at 15500 Lakeshore Boulevard. According to Cuadra, the drive took approximately 35 minutes. Ruffin testified that during the drive, he observed Ball pull over to the curb, and Mowler stopped alongside Ball's Expedition to have a brief conversation. After the conversation, Mowler took the lead for the remainder of the journey. When they reached their destination, Mowler was in a position to open the gate with his key to allow himself and his codefendants to enter.

{¶16} Although the package was not in Mowler's vehicle, the careful coordination of activity between Mowler and his codefendants related to the delivery of the package is

sufficient to support probable cause for Mowler's arrest. Any reasonable police officer observing the events and the defendant's careful coordination of activity would have a reasonable belief that Mowler was aware of and involved in the transportation of the package containing a large amount of marijuana.

{¶17} In support of his argument for suppression, Mowler relies on *State v. Blackshear*, 8th Dist. Cuyahoga No. 95424, 2011-Ohio-1806 (in which this court reversed the defendant's trafficking conviction on the basis of sufficiency). As in the instant case, police had intercepted a package containing marijuana that was delivered to the defendant's residence. After the delivery, the defendant placed the package near a cocktail table by the door where his father kept his mail, and resumed playing video games with his friend.

{¶18} Two hours later, police searched the residence pursuant to a warrant and found the unopened package in the home. The defendant and another male were in the living room playing video games. This court reversed the conviction because there was insufficient evidence to demonstrate that the defendant knew there was marijuana in the package. *Id.* at ¶ 41-42. The defendant's name was not on the package, and he had reason to believe the package was a typical delivery for his father, who often received packages in the mail. *Id.*

{¶19} We find the instant case distinguishable from *Blackshear*. The defendant in *Blackshear* was not expecting a package and assumed the package was for his father. By contrast, the defendants' action in this case demonstrate they were expecting a

delivery. West was waiting outside the house at the delivery address, and Mowler was acting as a lookout on the street until the package was delivered.

**{¶20}** Furthermore, Mowler gave the police permission to search his apartment. "[A] search of property without a warrant or probable cause but with proper consent having been voluntarily obtained does not violate the Fourth Amendment." *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 98, citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 249, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *State v. Posey*, 40 Ohio St.3d 420, 427, 534 N.E.2d 61 (1988).

**{¶21}** Detective Lake advised Mowler of his *Miranda* rights as soon as the police made contact with him. After a brief discussion, Mowler signed a written consent form allowing the police to search his apartment. The consent form, which Detective Lake read to Mowler before he signed it, states:

> I, Maurice Mowler, having been informed of my constitutional rights not to have a search made of premises hereafter mentioned, without a search warrant, and of my right to refuse to consent to search, * * * hereby authorize Captain Heffernan and their narcotics and SWAT unit and detectives to conduct a complete search of my premises located at 15500 Lakeshore, #706. I am the lessee of the premises to be searched.
>
> * * *
>
> This written permission is being given by me to the above named persons voluntarily and without threats or promises of any kind.

**{¶22}** Thus, there was competent, credible evidence demonstrating that not only did police have probable cause to arrest Mowler, but Mowler gave written consent to

police to search his apartment. Any evidence discovered in the apartment was therefore discovered legally.

**{¶23}** Accordingly, we overrule the first assignment of error.

## Sufficiency of the Evidence

**{¶24}** In the second assignment of error, Mowler argues the evidence adduced at trial is insufficient to sustain his convictions. He contends there was no evidence that he knew there was marijuana in the package delivered to West and that he never had possession of marijuana.

**{¶25}** Crim.R. 29(A) provides for a judgment of acquittal "if the evidence is insufficient to sustain a conviction of such offense or offenses." The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶26}** Defendant was convicted of drug trafficking in violation of R.C. 2925.03(A)(2), and possessing criminal tools in violation of R.C. 2923.24(A). R.C. 2925.03(A)(2) states:

> No person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable

cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

{¶27} R.C. 2923.24(A), which governs possession of criminal tools, prohibits one from possessing or having under the person's control "any substance, device, instrument, or article, with purpose to use it criminally."

{¶28} Additionally, R.C. 2923.03(A)(2), Ohio's complicity statute provides, in relevant part, that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense." R.C. 2923.03(F) provides that anyone guilty of aiding or abetting the principal offender shall be prosecuted as if he were the principal offender.

{¶29} To support a conviction for complicity by aiding and abetting, the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. *State v. Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796 (2001), syllabus. Evidence of aiding and abetting may be demonstrated by both direct and circumstantial evidence. *State v. Molina*, 8th Dist. Cuyahoga No. 83731, 2004-Ohio-4347, ¶ 26. Therefore, "'participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.'" *Id*. quoting *State v. Cartellone*, 3 Ohio App.3d 145, 150, 444 N.E.2d 68 (8th Dist.1981).

{¶30} Although West received the package, and the package was transported in the Expedition instead of Mowler's Isuzu, Mowler's collaboration in the transportation of the package from the delivery address to his apartment demonstrates that Mowler aided and

abetted his codefendants in drug trafficking. Detectives testified that the two vehicles traveled in tandem for approximately 35 minutes. During this time, the vehicles were never separated by more than two cars. Ball, who was driving the Expedition, pulled over to the side of the road to allow Mowler to lead the way and open the gate to his apartment complex on arrival.

{¶31} Furthermore, the detectives observed Mowler acting as a lookout while he and his codefendants were waiting for the package to be delivered. Mowler's intent to aid and abet drug trafficking is also evidenced by the fact that the large package of marijuana was transported to his apartment where Mowler kept a scale, packaging material, and a food saver machine. Detective Lake testified that the food saver device is often used in drug trafficking because the shrink wrap eliminates the air and odor from packages. Scales are used in drug trafficking to weigh quantities of drugs for sale.

{¶32} Moreover, the detectives found marijuana and substantial sums of money in Mowler's apartment. The scale and food saver device were obviously used to prepare the marijuana for sale in smaller quantities and therefore constituted criminal tools. Thus, the circumstantial evidence suggests that Mowler and his codefendants were transporting the package of marijuana to Mowler's apartment to be weighed and packaged for distribution. We find this evidence is sufficient to sustain Mowler's convictions.

{¶33} Therefore, the second assignment of error is overruled.

{¶34} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the common pleas court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

LARRY A. JONES, SR., P.J., and
TIM McCORMACK, J., CONCUR