[Cite as *State v. Miller*, 2011-Ohio-2388.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 94662

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## HOWARD MILLER

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-526850

**BEFORE:** Kilbane, A.J., Stewart, J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:** May 19, 2011

ATTORNEY FOR APPELLANT

Richard H. Drucker
700 West St. Clair Avenue
The Hoyt Block, Suite 214
Cleveland, Ohio 44113-1274

ATTORNEYS FOR APPELLEE

William D. Mason
Cuyahoga County Prosecutor
Luke Mahoney
Assistant County Prosecutor
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, A.J.:

{¶ 1}  Defendant-appellant, Howard Miller, appeals from his convictions for drug trafficking and drug possession.  For the reasons set forth below, we affirm the convictions, but because defendant was convicted of crimes that are allied offenses of similar import, we vacate the sentence and remand the case to the trial court for resentencing under R.C. 2941.25.

{¶ 2}  On July 29, 2009, defendant was indicted pursuant to a four-count indictment in connection with the controlled delivery of a package containing marijuana.  In Count 1, defendant was charged with trafficking in more than 200 grams but less than 1000 grams of

marijuana, with specifications for the forfeiture of a cell phone and a gun, and a one-year firearm specification. In Count 2, defendant was charged with possession of more than 200 grams but less than 1000 grams of marijuana. In Count 3, defendant was charged with possession of criminal tools, and in Count 4, defendant was charged with carrying a concealed weapon. Counts 2 through 4 additionally set forth specifications for the forfeiture of a cell phone and a Taurus 9mm handgun.

{¶ 3} Defendant pled not guilty and the matter proceeded to a jury trial on November 19, 2009.

{¶ 4} For its case, the State presented the testimony of Cleveland Police narcotics Sergeant Larry Hughes, Detectives Patrick Andrejcak, Neil Hutchinson, Michael Budny, Ralph Valentino, and Franklin Lake.

{¶ 5} Detective Andrejcak testified that he is in the drug interdiction unit with K-9 patrol and does drug investigations using a narcotics dog. Part of this unit's work involves investigations of packages delivered by FedEx that have indicators of drug trafficking. According to Detective Andrejcak, indicators include packages that are heavily taped, packages originating from high drug areas, and phone numbers that do not correspond to the areas where the sender or recipient lives. Once a package is deemed to have such indicators, the officers then determine whether the drug dog, which has been trained to detect the odor of

illegal narcotics, will "alert" to the package. If the dog alerts, then the officers obtain a search warrant to open the package.

{¶ 6} In this instance, Detective Andrejcak executed an affidavit in support of a search warrant on July 21, 2009. He averred that the dog alerted to the package, that the area from which it was mailed is a "major source area for mailed controlled substances to Northern Ohio," that it was sent to "Barbara Jones of 2952 East 123rd [in] Cleveland" from "Charles Finley," and that "people receiving parcels containing controlled substances will often use fictitious names or addresses for the receipt of the parcel[.]"

{¶ 7} A judge reviewed the affidavit and on July 21, 2009, granted a warrant to search the package and the recipient's address. Detective Andrejcak opened the box and determined that it contained a three-pound bundle of marijuana that was heavily wrapped in plastic wrap. The detective then rewrapped the package and arranged for a controlled delivery to be made by Detective Hutchinson.

{¶ 8} Detective Hutchinson testified that he also works in the narcotics interdiction unit, and he assisted Detective Andrejcak in examining the package, submitting it to the drug dog, and obtaining the search warrant. According to Detective Hutchinson, the officers contacted the Columbus Police Department and learned that a "Barbara Jones" did not reside at 2952 East 123rd Street and that the return address listed by "Charles Finley," the sender, is

actually not a residence but a Mailbox Plus location. In addition, the sender had listed Jones's area code as 310, which is not assigned to Cleveland area telephone numbers.

{¶ 9} Detective Hutchinson further established that after the officers obtained the warrant, they opened the package. A field evidence analysis revealed that it contained marijuana,[1] and the officers resealed the bag.

{¶ 10} Detective Hutchinson wore a FedEx uniform to complete the controlled delivery and drove to the residence in a FedEx van. Other officers and members of the SWAT team were also in place to monitor the delivery. The package was listed as a "knock and drop," meaning that the recipient was not required to sign for it. Detective Hutchinson testified that he walked to the door with the box and a clipboard and began to knock loudly. He heard people inside the dwelling and continued to knock, but no one answered the door. He left the package just to the right of the front door of the premises and, as he walked away, he saw someone grab the package and bring it inside. Detective Hutchinson drove away and alerted the other officers that the package had been delivered.

{¶ 11} Defendant and his wife exited the dwelling and walked toward a vehicle. He was carrying the box and placed it in his wife's car. The officers approached, arrested defendant, but did not search the residence.

---

[1]Laboratory analysis later indicated that it was 855 grams of marijuana.

{¶ 12} On cross-examination, Detective Hutchinson testified that the dwelling is a two-family home. He stated that he went to the correct unit, a dwelling that had previously been occupied by defendant's mother-in-law, but he admitted that he did not attempt to ascertain whether the package was intended for a prior resident, Rico Hunter. Detective Hutchinson further testified that after the officers arrested defendant, they learned that he has a permit to carry a handgun, which surprised Detective Hutchinson because defendant stated that he was not a United States citizen. Detective Hutchinson stated that he did not recall that defendant had a "distinctive accent."

{¶ 13} Detectives Budny and Valentino testified that they arrested defendant after he and his wife got into a vehicle. At this time, defendant had a loaded 9mm handgun, a pouch containing an additional magazine of ammunition, two cell phones, and a small bit of marijuana. Test firing subsequently revealed that the weapon was operable. No charges were issued in connection with the marijuana recovered from defendant's pocket.

{¶ 14} Detective Hughes testified that defendant asked why he was being arrested, and the officers replied that it was due to his possession of the box. At this time, defendant's wife indicated that her mother had resided at the unit but that the home was now in foreclosure.

{¶ 15} Detective Budny stated on cross-examination that defendant had an "obvious" accent.

{¶ 16} Detective Lake testified that he conducted surveillance during the controlled delivery. He observed only arms reaching from the door to pick up the box from the front stoop, but he did not see this individual's face. Minutes later, defendant and his wife exited the home, and the defendant was carrying the box. He further stated that although the structure is a two-family dwelling, it appeared to be abandoned. He next testified that the alleged recipient, one "Barbara Jones," was not associated with the dwelling. Moreover, because this fictitious name was listed as the recipient, he did not believe it was necessary to determine past occupants of the home.

{¶ 17} Defendant elected to present evidence and offered the testimony of his wife, Dena Miller (Dena). Dena testified that her mother had lived on the first floor of the two-apartment dwelling, but the building was now in foreclosure. She and defendant went there to help her mother pack and to check the mail.

{¶ 18} She stated that she could not come to the door when the package was being delivered. When she went to the door a few moments later, she observed that the box was addressed to someone else, so she had her husband put it in the car in order to return it to FedEx. The police arrested her as she began to dial the telephone number to FedEx.

{¶ 19} Dena additionally testified that an individual named Rico Hunter had lived in the upstairs apartment, and after Hunter applied for a job with her employer, she learned that he has an extensive criminal record, including convictions for drug trafficking and drug

possession.  Dena further testified that from time to time, Hunter still receives mail at the apartment.

{¶ 20} She stated that both she and defendant have permits to carry concealed handguns.  She further stated that her husband has a Jamaican accent and believes that the police suspected him of drug trafficking for that reason.

{¶ 21} At the close of all of the evidence, the trial court entered a Crim.R. 29 judgment of acquittal as to Count 4, the charge of carrying a concealed weapon.   The jury subsequently found defendant guilty of trafficking and the firearm specification, as alleged in Count 1, but not guilty of the forfeiture specifications for this count.   The jury also found defendant guilty of the charge of possession and the forfeiture specification as set forth in Count 2, but the jury acquitted defendant of the charge of possession of criminal tools as alleged in Count 3.   The trial court sentenced defendant to a total of 18 months of imprisonment for trafficking and a concurrent term of six months for drug possession, plus postrelease control of up to three years.

{¶ 22} Defendant now appeals and assigns four errors for our review.

{¶ 23} Defendant's first assignment of error states:

**"The search warrant issued by [the trial court] was issued unlawfully because the law enforcement officer and State of Ohio could not make a prima facie showing of probable cause for a search based on the narcotic[s] detection**

dog's alert because the affidavit failed to show reliability demonstrating that the dog has been properly trained and certified, and, further, it was plain error to admit evidence obtained from the search warrant in this criminal litigation."

{¶ 24} The Fourth Amendment provides that "[t]he right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *." The Fourth Amendment is enforceable against the states through the Due Process Clause of the Fourteenth Amendment. *Mapp v. Ohio* (1961), 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081.

{¶ 25} "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas v. Illinois* (1978), 439 U.S. 128, 133-134, 99 S.Ct. 421, 58 L.Ed.2d 387, quoting *Alderman v. United States* (1969), 394 U.S. 165, 174, 89 S.Ct. 961, 22 L.Ed.2d 176. As such, the party seeking suppression of evidence has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure. Id. If the defendant cannot satisfy this burden, then he or she cannot invoke the exclusionary rule. *State v. Conner*, Cuyahoga App. No. 84073, 2005-Ohio-1971.

{¶ 26} Thus, while closed packages are effects in which persons have legitimate expectations of privacy and require a warrant to search, *United States v. Jacobsen* (1984), 466

U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85, a defendant may not challenge the search of a parcel that he claims is not his. *Conner*; *State v. Carter*, Portage App. No. 2003-P-0007, 2004-Ohio-1181 (person who denies ownership of an item does not possess an expectation of privacy in the item to which he or she disclaimed ownership so he does not have standing to challenge the search of that item).

{¶ 27} In this matter, the search warrant was issued for the parcel that "bears the recipient name 'Barbara Jones' and a recipient address of 2952 East 123rd Street, Cleveland, Ohio 44120, and bearing a return name, phone number and address of: 'Charles Finley,' 3717 S. Labrea Ave. #106, Los Angeles, California." At the time the search warrant was executed, defendant had no legitimate expectation of privacy in the parcel, and defendant could not establish that the execution of the search warrant violated his Fourth Amendment rights. Accord *State v. Norris*, Morgan App. No. CA04008, 2005-Ohio-3469 (defendant lacked standing to challenge search warrant for a residence where he did not reside).

{¶ 28} In any event, even assuming that defendant had a legitimate expectation of privacy in the parcel based upon his subsequent possession of it, we conclude that the good faith exception precluded the application of the exclusionary rule. Although it is well settled that a positive reaction by a properly trained narcotics dog can establish probable cause for the presence of controlled substances, the affidavit in support of a search warrant must establish the training and reliability of the drug-detecting dog. *State v. Nguyen*, 157 Ohio App.3d 482,

2004-Ohio-2879, 811 N.E.2d 1180. However, the exclusionary rule should not be used to exclude evidence "obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." *United States v. Leon* (1984), 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677.

{¶ 29} In this matter, we conclude that it was "objectively reasonable" for the officers in this case to have relied on the search warrant issued to them by the magistrate. See *State v. Wilkins* (June 19, 1998), Montgomery App. No. 16817.

{¶ 30} The first assignment of error is without merit.

{¶ 31} Defendant's second assignment of error states:

**"Defendant-appellant was denied his due process rights to a fair trial by the assistant county prosecutor's comments in closing argument about the failure of defendant-appellant to testify."**

{¶ 32} Generally, prosecutors are entitled to considerable latitude in opening and closing arguments. *State v. Ballew*, 76 Ohio St.3d 244, 1996-Ohio-81, 667 N.E.2d 369. In evaluating a claim that the prosecuting attorney has committed misconduct in connection with comments made during closing argument, the test is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. *State v. Smith* (1984), 14 Ohio St.3d 13, 470 N.E.2d 883.

{¶ 33} The State is permitted to comment upon the defendant's failure to offer evidence in support of his case, *State v. Collins*, 89 Ohio St.3d 524, 527-28, 2000-Ohio-231, 733 N.E.2d 1118, but it is improper for a prosecutor to comment on the defendant's failure to testify. *State v. Twyford*, 94 Ohio St.3d 340, 355, 2002-Ohio-894, 763 N.E.2d 122. The question is whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify. *State v. Webb*, 70 Ohio St.3d 325, 328-29, 1994-Ohio-425, 638 N.E.2d 1023.

{¶ 34} In this matter, the record indicates that defendant's trial counsel informed the jury during his opening statement that the defendant has a Jamaican accent. Later, in his closing argument, defendant's attorney made six references to defendant having a Jamaican accent. He then stated:

> "You hear the accent, you see the gun and you end the case right there.
>
> * * *
>
> Now there was a lot of talk, a lot of questions about accent because he clearly has one, as some of the officers remembered vividly. While others did not. You know, this accent stuff needs to end because at some point everybody had accents. I know my grandparents did. Maybe your parents or grandparents did. He sure does, but we have to get over this accent thing."

{¶ 35} Thereafter, the prosecuting attorney in his final closing argument stated:

> "Constantly referring to the accent. Who on this jury heard the defendant's accent? Not a single one of you. He's constantly referring to the accent. He's trying to distract you from what's going on here. This case has nothing to do with his accent or race. * * * And remember defense counsel's

opening statement, as well as his constant referral to — his constant reference to the defendant's accent? In his opening statement, I think we were all under the impression that we were going to hear that accent. Ask yourself why you didn't hear that accent."

{¶ 36} Our review of the record indicates that the comments were manifestly intended to rebut the charge of the defense that the officers arrested defendant based upon his Jamaican accent. However, we conclude that they were of such character that the jury would naturally and necessarily take them to be a comment on the failure of the accused to testify. Accordingly, the remarks were improper.

{¶ 37} Turning to the issue of whether the remarks prejudicially affected substantial rights of the defendant, we conclude, after reviewing the record as a whole, that they did not. We find it clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would have found the defendant guilty. *Smith*; *State v. Zimmerman* (1985), 18 Ohio St.3d 43, 479 N.E.2d 862, syllabus. The conviction must be affirmed if it is concluded, based on the whole record, that the prosecutor's improper comments were harmless beyond any reasonable doubt.

{¶ 38} This assignment of error is without merit.

{¶ 39} Defendant's third assignment of error states:

**"The defendant-appellant was denied his due process rights to a fair trial by the ineffective assistance of his trial counsel."**

{¶ 40} Within this assignment of error, defendant maintains that his trial counsel was ineffective for failing to move for suppression of the evidence obtained in this matter and

failing to object to hearsay evidence concerning the name of the resident of 2952 East 123rd Street in Cleveland.

{¶ 41} In order to establish a claim of ineffective assistance of trial counsel, it is clear that a defendant must make a two-part showing:

> "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland v. Washington* (1986), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. Accord *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus.

{¶ 42} The *Strickland* court also cautioned courts examining the issue that:

> "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland* at 689.

{¶ 43} An attorney is presumed to be competent. *State v. Smith* (1985), 17 Ohio St.3d 98, 100, 477 N.E.2d 1128. An appellant bears the burden of proving his claim of ineffective assistance of counsel. Id.

{¶ 44} Moreover, counsel does not perform ineffectively by failing to file futile motions, and is not ineffective for failing to file a motion to suppress evidence when there is no reasonable probability that the motion would be granted. See *State v. Martin* (1983), 20 Ohio App.3d 172, 174, 485 N.E.2d 717. Where there exist no grounds for the suppression of evidence, defense counsel has no duty to pursue a motion to suppress evidence. *State v. Gibson* (1980), 69 Ohio App.2d 91, 430 N.E.2d 91; *State v. Means* (June 30, 1994), Cuyahoga App. No. 65744. Where the record is devoid of facts to indicate that a motion to suppress would have been granted, a claim for ineffective assistance of counsel on this basis must fail. Id.; *State v. Woolum* (1976), 47 Ohio App.2d 313, 354 N.E.2d 712.

{¶ 45} In this matter, for the reasons set forth in our discussion of the first assignment of error, we conclude that the police did not violate defendant's Fourth Amendment rights in searching the package mailed to Barbara Jones. Alternatively, we have concluded that the officers acted in good faith reliance upon the search warrant issued herein. Therefore, we conclude that the record is devoid of facts that indicate that a motion to suppress would have been granted in this matter. There is no reasonable probability that the motion would be granted, it would have been a futile act for defendant's trial counsel to file a motion to suppress the results of the search of that package, and trial counsel did not err in failing to do so. See *Martin.*

{¶ 46} Moreover, defendant's trial counsel's theory of the case was that after defendant and his wife (Dena) realized that the package was incorrectly left at his mother-in-law's former apartment, they placed it in their car solely to return it to FedEx, and they were arrested as Dena was calling the courier. The defense also presented evidence that Rico Hunter, a former upstairs tenant who has an extensive criminal record, including convictions for drug trafficking and drug possession, still receives mail at the apartment. The failure to file a motion to suppress could have therefore been a reasonable tactical decision or trial strategy.

{¶ 47} With regard to the introduction of hearsay evidence that the officers learned from the Columbus Police Department's internet search that Barbara Jones did not reside at 2952 East 123rd Street, we find no prejudicial error as defendant presented evidence that Jones did not live there, that the package was misdelivered, and that he and his wife were returning it to FedEx.

{¶ 48} The third assignment of error is therefore without merit.

{¶ 49} Defendant's fourth assignment of error states:

**"Appellant's conviction is against the manifest weight of the evidence."**

{¶ 50} In determining whether a conviction is against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 54, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652. The

reviewing court must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id., quoting *Martin* at 175.

{¶ 51} The appellate court may not merely substitute its view for that of the jury, and reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id., quoting *Martin*.

{¶ 52} In this matter, after examining the entire record, weighing the evidence and all reasonable inferences, we are unable to conclude that the jury clearly lost its way and created such a manifest miscarriage of justice in convicting defendant of the offenses. The evidence demonstrated that a heavily taped package was mailed from a Mailbox Plus to "Barbara Jones," at 2952 East 123rd Street, and that Barbara Jones did not reside at that location. The evidence further demonstrated that defendant and his wife were in the structure that is in foreclosure and appears to be abandoned. They did not answer the door to accept delivery of the package in person, but they immediately took it from the front porch area as the individual attempting to deliver it had left. A few minutes later, they then were in possession of the package as they left the dwelling. This evidence strongly indicates that they were waiting for the fictitiously

addressed package at the abandoned home. The explanation offered by the defense that they were assisting defendant's mother-in-law with packing her belongings was belied by the fact that the package of marijuana was the only thing they removed from the residence. Similarly, defendant's wife's claim that they were simply returning the package to FedEx was belied by the fact that they left immediately after receiving the package and made no attempt to flag down the individual who had delivered it.

{¶ 53} In this connection, we find this matter to be distinguishable from this court's decision in *State v. Blackshear*, Cuyahoga App. No. 95424, 2011-Ohio-1806. In *Blackshear*, the defendant was convicted of drug trafficking and drug possession stemming from the controlled delivery of a package containing 3669.2 grams of marijuana to a house owned by defendant's father. At the time of the controlled delivery, defendant's father was asleep upstairs, and the defendant, who also lived there, was playing video games with a friend. The detective who made the delivery testified that he asked if defendant was waiting for a package, and defendant stated that he was. Defendant accepted the package and signed his name to the log sheet, which was attached to a clipboard that was sitting on top of the box. Defendant then took the package. The detective further testified that he usually asks whether the person signing for the package is the recipient. According to defendant, however, the undercover detective tilted the box and clipboard in front of defendant for his signature and said nothing. Because it was very cold outside, defendant quickly signed the paper on the

clipboard, and the detective handed him the package.  Defendant stated that he was not expecting a package, and he put the box in front of the cocktail table near the door, where he and his father keep the mail.  He stated that he did not look at the label and simply assumed the package was for his father, who regularly has memorabilia and diabetes medicine delivered to the house.  When police executed a search warrant for the premises approximately two hours later, defendant and another male were in the living room at the time playing video games.  The package was unopened.

{¶ 54} The trial court instructed the jury regarding "deliberate ignorance" or "willful blindness" as to whether defendant had reason to believe that the package contained contraband.  Defendant was subsequently convicted of drug trafficking and drug possession. This court found insufficient evidence that defendant had actual knowledge of the drugs or closed his eyes to criminal activity and reversed defendant's convictions.  This court stated:

> "Defendant was accustomed to signing for packages for his father, who often received boxes in the mail.  On the day in question, defendant signed for a package without looking at the shipping label.  Defendant did not open the package because he thought it was for his father.  Instead, he placed the box where he usually places his father's mail and returned to playing a video game for the next two hours, until the police arrived to search his house.
>
> Accordingly, there is insufficient evidence in the record that defendant had actual knowledge of the drugs or closed his eyes to criminal activity."

{¶ 55} In the instant matter, however, the record indicates that defendant and his wife went to the address listed on the package, which was an abandoned dwelling.  They refused

to answer the door for the delivery person, then, after the package had been left by the door, they  immediately took the package and left the premises.  On this record, a jury could reasonably conclude that defendant knew that the package contained contraband, that he and his wife went to the residence because they were expecting the package, and they left the residence after obtaining the package.

**{¶ 56}** The fourth assignment of error is without merit.

**{¶ 57}** We note, however, that in *State v. Cabrales,* 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, paragraph two of the syllabus, the Ohio Supreme Court held that "[t]rafficking in a controlled substance under R.C. 2925.03(A)(2) and possession of that same controlled substance under R.C. 2925.11(A) are allied offenses of similar import because commission of the first offense necessarily results in commission of the second." Therefore, we note plain error in connection with defendant's conviction for both trafficking in marijuana under R.C. 2925.03(A)(2) and possession of that same controlled substance under R.C. 2925.11(A).

**{¶ 58}** This issue is not rendered moot by the trial court's imposition of concurrent terms for each conviction.  *State v. Underwood,* 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923.   Accordingly, defendant's convictions are affirmed, his sentence is vacated, and we remand the case to the trial court for resentencing, at which time the State will elect which

of the allied offenses it wishes to pursue at sentencing for which the defendant should be punished. See *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

MARY EILEEN KILBANE, ADMINISTRATIVE JUDGE

MELODY J. STEWART, J., CONCURS IN JUDGMENT ONLY (SEE SEPARATE CONCURRING OPINION)
EILEEN A. GALLAGHER, J., DISSENTS (SEE SEPARATE DISSENTING OPINION)

MELODY J. STEWART, J., CONCURRING IN JUDGMENT ONLY:

{¶ 59} I concur with the judgment affirming Miller's conviction, but write separately because I believe the legal standard employed in *State v. Nguyen,* 157 Ohio App.3d 482, 2004-Ohio-2879, 811 N.E.2d 1180, for

assessing the sufficiency of a warrant affidavit based on the results of a canine search is unduly restrictive. I also believe that the state's comment on Miller's failure to offer proof of his accent was just within permissible bounds and did not constitute a comment on his failure to testify.

## I

{¶ 60} "In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' (*Illinois v. Gates* [1983], 462 U.S. 213, 238-239, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 followed.)" *State v. George* (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, N.E.2d 640, paragraph one of the syllabus.

{¶ 61} The rule set forth in *Nguyen*, that the affiant must first set forth a drug-sniffing dog's training and reliability is overbroad. The federal courts have no requirement that the handler of a drug-sniffing dog set forth the dog's qualifications as a predicate to the issuance of a warrant based on the dog alerting to the presence of drugs. "A reasonable inference to be drawn from the designation 'k-nine handler' is that both the handler and dog has undergone training; indeed, a handler must be taught how to recognize the

dog's alerting behavior." *United States v. Randolph* (C.A.6, 1999), 173 F.3d 857, fn.3. See, also, *United States v. Venema* (C.A.10, 1977) , 563 F.2d 1003, 1007 (affidavit in support of a search warrant need not describe the drug-detecting dog's educational background and general qualifications with specificity to establish probable cause); *United States v. Berry* (C.A.6, 1996), 90 F. 3d 148, 153 (search warrant application need not describe the particulars of a dog's training, reference to dog as a "drug sniffing or drug detecting dog" sufficient to support probable cause); *United States v. Allen* (C.A.4, 1998), 159 F.3d 832, 839-840 (rejecting standard that "dog alert testimony must satisfy the requirements for expert scientific testimony * * *."); *United States v. Sundby* (C.A.8, 1999), 186 F.3d 873, 876 ("To establish a dog's reliability, the affidavit need only state the dog has been trained and certified to detect drugs.")

{¶ 62} I would employ the federal approach and find under the "practical, common-sense" approach to issuing warrants, that an affiant who states qualifications for K-9 handling, working in tandem with a K-9 dog, shows sufficient initial qualifications from which a magistrate could find that a drug alert shows a fair probability of criminal activity to justify issuance of a warrant. Admittedly, the affidavit offered by the K-9 handler in this case is bare bones — it details the handler's qualifications and states that "K-9 Daisy alerted to a suspect package indicating to your Affiant that it contained

illegal narcotics." While the affidavit does not describe "Daisy as a drug-sniffing dog, the designation of a dog as a "K-9" could only mean that the dog had been trained and certified in drug detection. Indeed, this is the only reasonable conclusion in light of the handler's description of himself as a canine handler. The dog's use for drug detection under the circumstances would serve no other rational purpose. Applying the practical, common-sense approach to review the sufficiency of search warrants, I believe that the affidavit supplied the issuing judge with enough information to justify the warrant. If Miller wished to object to or challenge the dog's certification or credentials, he could have appropriately done so. Having failed to do so, he cannot be heard to argue that the K-9 was too unqualified to justify the issuance of a warrant.

## II

{¶ 63} As to the issue of whether the state improperly commented on Miller's failure to testify, I believe the state's comment was just barely permissible. As the lead opinion notes, Miller injected the issue of his accent into the case. This was unnecessary because the evidence showed that the police had made the decision to arrest him before they ever heard him speak. The police employed an elaborate take-down, using an undercover officer to deliver the package and having several officers move in for the arrest after seeing Miller leave the house. The evidence fairly showed that the police

were going to arrest the bearer of the package regardless of whether the bearer's dialect was the same as the arresting officers, spoke with an accent (foreign or domestic), or was unable to speak at all. So Miller's accent was immaterial to his arrest.

{¶ 64} Miller argued that he was in possession of the package only because it had been misdelivered and he was returning it Federal Express. He wanted the jury to find that the police rejected this excuse post-arrest because they unfairly equated someone of Jamaican descent with marijuana trafficking. This argument was unlikely to prevail with the jury — his possession of a package containing nearly two pounds of marijuana that had just been delivered and his possession of a firearm (even if properly licensed) were more realistically the motivating factor in causing the police to reject his explanation than was his accent. The police could also have thought that it was the rare person who, minutes after discovering that a package was misdelivered to one's house, would personally return the package to the delivery service rather than call the delivery service to notify it of the mistake and arrange to have the package picked up. The state's closing argument was thus a reference to Miller's unnecessary attempt to inject his accent as an issue in the case.

{¶ 65} Troubling, however, is the reference made by the state: "And remember defense counsel's opening statement, as well as his constant

referral to — his constant reference to the defendant's accent? In his opening statement, I think we were all under the impression that we were going to hear that accent. Ask yourself why you didn't hear that accent." This reference is a close call. Defense counsel did tell the jury during opening statement that "my client is of Jamaican descent. He has an accent. A strong Jamaican accent." He later told the jury "we have to be careful *when we hear his accent* and we know about other things that happened in Cleveland or around this country." (Emphasis added.) These statements implied that defendant would be testifying, for the statement "when we hear his accent" would serve no other purpose because there were no audio recordings of Miller's voice or other means of "hearing" the accent without his testifying.

{¶ 66} As the lead opinion notes, the state is allowed to comment on a defendant's failure to present evidence that is promised to be forthcoming. See *State v. Handwork*, 11th Dist. No. 2002-P-0134, 2004-Ohio-6181, ¶39. By telling the jury that it would "hear his accent," Miller left himself open to fair comment on his failure to deliver a promised defense, thus arguably inviting any error. See *State v. Watson*, 1st Dist. No. C-010691, 2002-Ohio-4046, ¶28.

{¶ 67} The state should have chosen its words more carefully — even the court recognized as much when it said it was "troubled by the comments.

They are skirting and inappropriate." But in the end, we must determine whether the state's remarks were of such a character that the jury would "naturally and necessarily take it to be a comment on the failure of the accused to testify." *State v. Webb*, 70 Ohio St.3d 325, 328-329, 1994-Ohio-425, 638 N.E.2d 1023. With Miller having strongly implied to the jury that he would be testifying and then continuing to make an issue out of his accent in his closing argument despite not delivering the promised evidence, the state's rejoinder stayed just within the bounds of what could be considered appropriate.

EILEEN A. GALLAGHER, J., DISSENTING:

{¶ 68} For the following reasons, I respectfully dissent from the majority opinion. Because I find the search warrant issued on July 21, 2009 for the suspected package to be defective and that the state committed prosecutorial misconduct by improperly referencing Miller's failure to testify, I would vacate the convictions and imposed sentence and remand for proceedings consistent with this dissent.

{¶ 69} As pointed out by the state and acknowledged by Miller, Miller failed to move to suppress the evidence recovered from the search of the suspected package at the FedEx package terminal. Nonetheless, Miller

argues this court should acknowledge that plain error occurred. Specifically, Miller argues that the affidavit accompanying the application for the search warrant did not set forth the training and reliability of the drug-detection dog and, therefore, the affidavit could not support the probable cause needed for a search of the seized package. I agree with Miller's argument.

{¶ 70} Crim.R. 52(B) is known as the "plain error rule." In *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, the Ohio Supreme Court, in interpreting Crim.R. 52(B) stated "[t]he power afforded to notice plain error * * * is one which courts exercise only in exceptional circumstances, and exercise cautiously even then." *Long* at 94. Quoting the United States Court of Appeals for the Sixth Circuit in *United States v. Rudinsky* (C.A.6, 1971), 439 F.2d 1074, 1076, Long further explains "[t]he plain error rule is to be invoked only in exceptional circumstances to avoid a miscarriage of justice." *Long* at 94. In order to establish plain error, appellant must show that, but for the error, the outcome of the trial would have been different. *State v. Ruppart,* 187 Ohio App.3d 192, 2010-Ohio-1574, 931 N.E.2d 627.

{¶ 71} As noted by the majority opinion, it is well settled under Ohio law that an alert from a properly trained drug-detection dog provides probable cause for the presence of controlled substances. *Nguyen*; *State v. Lopez,* 166 Ohio App.3d 337, 2006-Ohio-2091, 850 N.E.2d 781. However, before a finding of probable cause can be made, the state must establish the

drug-detection dog's reliability. *Nguyen*; *Lopez*. Ohio courts have held that the state can establish reliability by presenting evidence of the dog's training and certification that can be testimonial or documentary. *Lopez*. "Once the state establishes reliability, the defendant can attack the dog's 'credibility' by evidence relating to training procedures, certification standards, and real-world reliability." Id.

{¶ 72} In the present case, Detective Andrejcak's affidavit in support of the search warrant failed to set forth facts concerning the training and certification of K-9 Daisy and any training and certification between Detective Andrejcak and Daisy. Accordingly, the state failed to establish the reliability necessary to support a finding of probable cause.

{¶ 73} Based on the foregoing, this search warrant never should have been issued. The crux of the state's application for a search warrant was Daisy's positive alert on the suspected package. However, the state failed to present any evidence of Daisy's reliability in performing the drug sniff. As such, the search warrant should not have been issued as there did not exist probable cause to support the search. Moreover, but for the issuance of this warrant, police officers never would have encountered Miller or his wife on July 29, 2009, and this trial never would have happened. Thus, I find that plain error occurred in this case.

{¶ 74} The majority opinion, while not acknowledging the defectiveness of the instant warrant, states that the good faith exception to the warrant requirement precludes the application of the Fourth Amendment's exclusionary rule. While I agree with this principle of law, I disagree that good faith existed in this case.

{¶ 75} Police officers are trained on the issuance of warrants and the requirements for an application for a search warrant. It is not unreasonable, therefore, to assume that officers know that evidence of a drug-detection dog's reliability must be included if a positive sniff is the basis for a claim of probable cause. Equally, I find it unreasonable for any officer to rely on a warrant issued by a neutral and detached magistrate that fails to set forth the reliability upon which an argument for probable cause rests. Specifically, Detective Andrejcak prepared the affidavit and failed to set forth Daisy's reliability, a failure of which he should have been aware. Accordingly, I find that the good faith exception to the warrant requirement does not apply in the instant case.

{¶ 76} Lastly, the majority opinion argues that Miller does not have standing to challenge the state's search because he disclaimed ownership of the suspected package. I find this argument to be inapplicable to the instant case. Based on the evidence before the court, it is my contention that the trial court never should have issued the warrant and that it was plain error

to do so. Miller never challenged the legality of the search and, therefore, standing is not at issue in this case.

{¶ 77} I would therefore, sustain Miller's first assignment of error.

{¶ 78} I also disagree with the majority opinion's analysis of Miller's second assignment of error. The majority correctly cites the relevant statements made by the prosecutor during his closing argument, and ultimately concluded that although the statements were improper, they did not prejudice Miller's substantial rights.

{¶ 79} The framers of the Constitution recognized long ago the sacred right against self-incrimination and courts must be vigilant in preserving it. *State v. Beebe*, 172 Ohio App.3d 512, 2007-Ohio-3746, 875 N.E.2d 985. The most cherished rights of those who are subject to American jurisprudence and the criminal justice system are provided in the amendments to the United States Constitution. One of those rights provides that no person can be compelled to testify against themselves and case law guarantees that if a defendant does choose not to testify, no comment can be made on his silence. *Griffin v. California* (1965), 380 U.S. 609, 85 S.Ct 1229, 14 L.Ed.2d 106; *State v. Mapes* (Oct. 25, 1984), Cuyahoga App. No. 47191; *State v. Heller*, Franklin App. No. 01AP-648, 2002-Ohio-879.

{¶ 80} In my view, the comments by the prosecutor in this instance can be read as an impermissible inference of guilt regarding Miller's decision not

to testify. *Beebe.* The prosecutor continuously referred to Miller's Jamaican accent and even went so far as to ask the jury, "why you didn't hear that accent?" Although I acknowledge that closing arguments are not evidence for a jury to consider, the closing remarks of the state are the last words heard by the jury before they retire to deliberate.

{¶ 81} Taking into account all the circumstances of this case, I cannot conclude that the prosecutor's improper statements were harmless. I am influenced strongly by the fact that the prosecutor's impermissible reference of Miller's decision not to testify supported the state's theory that Miller was the owner of the suspected package; a theory that is otherwise not clear beyond a reasonable doubt from the evidence.

{¶ 82} Miller presented credible evidence that he and his wife intended to return the package to the FedEx location in Bedford. The package was delivered to the former residence of Miller's mother-in-law and was addressed to a person unknown to Miller or his wife. Miller did not open the suspected package and, in fact, had it in his possession for less than a few minutes. Miller's wife testified that she was about to call FedEx when police officers detained the couple. To the extent that the prosecutor's comments affirmed the state's theory that the package belonged to Miller, it directly influenced the jury's decision on the central issue of the trial.

**{¶ 83}** Accordingly, the state's impermissible reference to Miller's failure to testify effectively tipped the balance in favor of the state. See *United States v. McCoy* (C.A.9, 1984), 771 F.2d 1207 (holding that testimony by former assistant United States attorney that government had an extremely strong case against defendant was reversible error); *State v. Smith* (1998), 130 Ohio App.3d 360, 720 N.E.2d 149 (holding that a prosecutor's improper comment on a defendant's lack of an alibi during closing argument violated the Fifth Amendment); and *Beebe* (holding prosecutorial misconduct warranted a reversal of conviction when the prosecutor continuously referred to defendant's decision to take the Fifth Amendment on certain matters.)

**{¶ 84}** Because I find the prosecutorial misconduct that occurred during the trial negatively affected Miller's substantial rights, I would sustain Miller's second assignment of error.

**{¶ 85}** Moreover, although not raised on appeal, I find the evidence presented at trial insufficient to support Miller's convictions for drug trafficking in violation of R.C. 2925.03(A)(2) and drug possession in violation of R.C. 2925.11(A).

**{¶ 86}** This court dealt with a similar fact pattern in *State v. Blackshear*, Cuyahoga App. No. 95424, 2011-Ohio-1806. In *Blackshear*, Cleveland narcotics detectives were inspecting packages at the FedEx facility in Bedford Heights, Ohio, when they observed a heavily taped package that was shipped

overnight from Las Vegas to a person named Jarrett Smith, 991 Helmsdale Avenue in Cleveland Heights. Id. The shipping costs on the package were paid in cash, the label was handwritten, the two listed phone numbers were disconnected, and the recipient's name did not match the delivery address. Id. The police brought in a K-9 unit and Daisy, the narcotics dog, identified the suspect package as containing drugs. Id.

{¶ 87} The officers obtained a warrant and located 3669.2 grams of marijuana packaged in several heat sealed bags. Id. The officers also acquired an anticipatory search warrant for the Helmsdale house. Id. The officers then executed a controlled drop-off of the package to the residence where the defendant lived with his father, who owned the house. Id. At the time of the drop-off, the defendant answered the door, signed for the package, placed it on a table near the door, and returned to playing video games with his friend. Id. Blackshear stated that he believed the package was for his father, who regularly had packages delivered to the house. Id. Two hours later, police executed the search warrant and recovered the package, which remained unopened, near the front door. Id. A jury convicted the defendant of drug trafficking, drug possession, and possession of criminal tools. Id.

{¶ 88} On appeal, this court overturned Blackshear's convictions, holding that there was insufficient evidence to support his convictions for drug trafficking and drug possession. Id. Specifically, this court in

*Blackshear* determined that the state failed to support the element of knowledge with sufficient evidence. Id. In *Blackshear*, the trial court instructed the jury regarding "deliberate ignorance" or "willful blindness" as related to the defendant's state of mind: "You can further find the defendant acted knowingly if he deliberately closed his eyes to what he had reason to believe [were] the facts." Id. *State v. Smith* (June 15, 1995), Cuyahoga App. No. 67524.

{¶ 89} In *Blackshear*, this court found insufficient evidence that the defendant deliberately closed his eyes to the fact that the package contained marijuana. Id. Blackshear's name was not on the package, he had reason to believe the package was a typical delivery for his father, and there were no inconsistencies in his testimony, which was bolstered by consistent testimony from his father. Id. This court in *Blackshear* further stated as follows:

> **"The facts in the instant case do not suggest that defendant's suspicions were aroused or that he deliberately avoided knowledge of the package's contents. Evidence that defendant signed for the package does not prove that he knowingly committed drug possession or drug trafficking under the circumstances of this case. Indeed, without additional evidence implicating defendant, it is just as likely that defendant's father 'knowingly possessed' the package containing drugs."**

{¶ 90} In the present case, the trial court instructed the jury with the following definition of knowledge:

**"A person acts knowingly regardless of his purpose when he is aware his conduct will probably cause a certain result or he is aware that his conduct will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist. Since you cannot look into the mind of another, knowledge is determined from all of the facts and circumstances in evidence." (Tr. 512.)**

{¶ 91} Like *Blackshear,* the facts in the instant case do not suggest that Miller knew that the package "probably" contained marijuana. As stated above, Miller presented credible evidence that he and his wife intended to return the package to the FedEx location in Bedford. The package was delivered to the former residence of Miller's mother-in-law and was addressed to a person unknown to Miller or his wife. Miller did not open the suspected package and, in fact, had it in his possession for less than a few minutes. Miller's wife testified that she was about to call FedEx when police officers detained the couple.

{¶ 92} Accordingly, I conclude that the state failed to establish that Miller knew, or probably knew, that the package contained marijuana. Moreover, the evidence used to convict Miller is so inadequate that it is just as likely that Miller's wife knowingly possessed the package containing drugs. I therefore find plain error occurred as there was insufficient evidence to support Miller's convictions for drug trafficking and drug possession.

{¶ 93} Based on the foregoing, I would sustain Miller's first and second assignments of error rendering his third and fourth assignments of error moot. I would vacate Miller's conviction and sentence and remand the matter for proceedings consistent with this dissent.