[Cite as *State v. White*, 2018-Ohio-3673.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
### No. 106490

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# JASON E. WHITE

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED IN PART, MODIFIED IN PART

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-17-614163-A

**BEFORE:** Stewart, P.J., Laster Mays, J., and Keough, J.

**RELEASED AND JOURNALIZED:** September 13, 2018

[Cite as *State v. White*, 2018-Ohio-3673.]

**ATTORNEY FOR APPELLANT**

Paul A. Mancino, Jr.
Mancino Mancino & Mancino
75 Public Square Building, Suite 1016
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

Kristin M. Karkutt
Jennifer King
Assistant County Prosecutors
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH 44113

MELODY J. STEWART, P.J.:

{¶1} Defendant-appellant Jason E. White admitted to killing his wife by shooting her in the head. After being indicted on counts of aggravated murder and felonious assault, White elected to be tried by the court solely on the issue of whether he acted with prior calculation and design. The state showed that White believed that his wife was unfaithful to him and it relied on White's confession to the police in which he stated that he made the decision to kill her in advance of actually doing so. On this evidence, the court found White acted with prior calculation and design and found him guilty of aggravated murder, murder, and two counts of felonious assault. White was sentenced to a total prison term of 23 years to life.

{¶2} In this appeal from the judgment of conviction, White argues that the court erroneously admitted into evidence a number of firearms he owned that were not used in the shooting; that there was insufficient evidence to prove that he acted with prior calculation and design; that trial counsel should have filed a motion to suppress evidence; and that the court erred by accepting a waiver of a jury trial. A fifth error, relating to the merger of various offenses for sentencing, is conceded by the state. Apart from the conceded error, we find no other errors.

I. Admission of Irrelevant Evidence

{¶3} When the police searched White's house after the murder, they discovered, in addition to the murder weapon, a number of handguns, a shotgun, and a rifle. The court allowed evidence of the weapons to be admitted at trial. White argues that this evidence was irrelevant because the weapons were not used in the murder and he was licensed to carry a concealed weapon. The state maintains defense counsel opened the door to the evidence because he mentioned in his opening statement that the "house was full of guns[.]"

{¶4} We agree with White that "'the fact that a person collects knives or other weapons does not tend to make it more probable that the person is experienced with the use of knives and intends to use a knife to cause serious injury to others. * * * Possession and use are not equivalent.'" *State v. Thomas*, 152 Ohio St.3d 15, 2017-Ohio-8011, 92 N.E.3d 821, ¶ 37, quoting *Kaufman v. People*, 202 P.3d 542, 555 (Colo.2009). Nevertheless, the error is harmless beyond a reasonable doubt. *See* Crim.R. 52(A). White admitted that he shot his wife. The issue at trial was whether he acted with prior calculation and design to cause her death. Whether White had access to multiple firearms in addition to the one he used to kill his wife was irrelevant to the issue of prior calculation and design. Evidence showing the presence of the firearms would not have affected the court's verdict.

## II. Evidence of Prior Calculation and Design

{¶5} White next argues that there was insufficient evidence to prove that he acted with prior calculation and design when he killed his wife.

{¶6} The state charged White with aggravated murder in violation of R.C. 2903.01(A). That section states that "[n]o person shall purposely, and with prior calculation and design, cause the death of another * * *." "Prior calculation and design" is not defined by the Revised Code, but is considered to be "a scheme designed to implement the calculated decision to kill." *State v. Cotton*, 56 Ohio St.2d 8, 11, 381 N.E.2d 190 (1978). This is more than "momentary deliberation." *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 17, citing Ohio Legislative Service Commission, *Proposed Ohio Criminal Code: Final Report of the Technical Committee to Study Ohio Criminal Laws and Procedures*, at 71 (1971).

{¶7} In a recorded interview conducted just hours after the murder, White told the police that he and his wife had long been experiencing marital issues. These issues came to a head when he saw text messages on her cell phone that he believed indicated that she had been unfaithful with another man. His wife denied any infidelity, in contradiction to the text messages he claimed to have seen on her cell phone. Nevertheless, they talked throughout the night about their relationship. The following evening, they watched television together and discussed whether they should divorce. Before going to sleep in their basement bedroom, White decided he "couldn't take it anymore." When he awoke the following morning, White said he made the decision to kill his wife. They smoked a cigarette, and the wife, claiming to be tired from the evening spent talking, said she wanted to sleep some more. After she fell asleep, White obtained a gun, went upstairs, and placed a chair in front of his daughter's door so that she would not be able to leave the room and see what he was about to do. White returned to his sleeping wife and, using a heavy blanket to muzzle the sound of the shot, placed the handgun against her head and shot her. White then wrote a lengthy text message to his father, stating that "I can't live in jail so I don't see a better alternative I'm giving up my life for my daughter." White sent the text message and claimed that he tried to shoot himself, but that the gun jammed. When asked why he did not use another one of the weapons in the basement, White claimed that fate decided he should live, so he lost the will to die. The father arrived at White's house just minutes after receiving the text message. He found White

sitting on the side of the bed next to the wife, who was covered with a blanket. White told his father that he shot her. The father took the child and called the police.

{¶8} White did not make a spur of the moment decision to kill his wife. The court found that White's statements to the police laid the foundation for prior calculation and design; notably, when asked how it got to the point of murder, White responded, "it wasn't just an overnight type of thing." The court found that regardless of whether White formed the plan to kill his wife the night before or when he awoke:

[h]e had time to change his mind from the time that he smoked that cigarette from when he went to the bathroom, from when he carefully calculated putting the chair in front of his daughter's door so she couldn't see or hear anything, from the time that he took a perfectly folded blanket and placed it over her head so that he could muzzle the sound of that shot.

The court could rationally find that White made the decision to kill his wife the moment he woke up, and that the steps he took to make sure that his daughter would not witness the murder showed studied care in carrying out the plan. These facts show that White's actions "went beyond a momentary impulse and show that he was determined to complete a specific course of action." *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 46. The court's verdict was supported by sufficient evidence of prior calculation and design.

### III. Ineffective Assistance of Counsel

{¶9} For his third assignment of error, White complains that he was denied the effective of assistance of counsel because defense counsel failed to file a motion to suppress statements he made to the police after they entered his house without a warrant and without knocking.

{¶10} Central to White's argument is his assertion that there is no "crime scene" exception to the warrant clause of the Fourth Amendment to the United States Constitution. "It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable'" and is "'subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Nevertheless, an exception to the warrant requirement exists for searches conducted during exigent or emergency circumstances. *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). In emergency situations, the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe a person inside is in need of immediate aid. *Id*. at 392-393; *Michigan v. Fisher*, 558 U.S. 45, 47, 130 S.Ct. 546, 175 L.Ed.2d 410 (2009) (law enforcement "may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury.").

{¶11} The state played a recording of the 911 call that White's father made to the police. In that call, the father stated that White "just shot his wife" and "he's got a gun." The father said that the wife was "in the basement with my son," but when asked if he saw the wife, he could only say that she was "laying in the bed covered with a blanket." With this limited information, the police justifiably entered the house to render emergency assistance to the wife, whom they knew had been shot by White, but had no further indication of her condition. In addition, the police were told that White remained with the wife. They understood the scene as one with an active shooter and, in the words of a police investigator, "we didn't know what was going on and who was inside[.]" All of this was known to defense counsel. A motion to suppress on grounds that the police lacked a warrant when they entered the house would have been futile, so defense counsel did not violate any essential duty by refusing to file one. *State v. Miller*, 8th Dist. Cuyahoga No. 94662, 2011-Ohio-2388, ¶ 44.

{¶12} White also complains that defense counsel erred by failing to request a psychiatric evaluation even though granted funds to do so by the court. He maintains that an examination was warranted given that he contemplated killing himself after shooting his wife. We reject this assertion because the record shows that during sentencing, defense counsel informed the court that White had been examined by a forensic psychologist but did not offer the psychologist's report because White was found to be "sane and competent." In addition, the record shows that the court granted payment for the defendant's consulting psychologist. So not only would a motion based on White's alleged lack of competency have been futile, appellate counsel's argument that defense counsel failed to seek an evaluation is frivolous.

{¶13} Finally, White argues that defense counsel erred by conceding guilt without White's express consent. This case is not affected by the recent United States Supreme Court decision in *McCoy v. Louisiana*, 584 U.S. ___, 138 S.Ct. 1500, 200 L.Ed.2d 821 (2018), where the court held that "counsel may not admit her client's guilt of a charged crime over the client's intransigent objection to that admission[.]" *Id*. at 833. White freely admitted to shooting his wife in his statement to the police and did not offer an "intransigent objection" to defense counsel's strategy. *United States v. Weston*, E.D.Pa. No. 13-cr-25-01, 2018 U.S. Dist. LEXIS 91306, 15 (May 31, 2018), fn. 31.

{¶14} In fact, White rejected a plea offer in which he would plead guilty to a single count of aggravated murder in exchange for a sentence of 20 years to life, with a three-year firearm specification. White desired to plead to a single count of murder with a term of 15 years to life, with a three-year firearm specification. When the state rejected that counteroffer, White elected to try the case on the sole issue of prior calculation and design, being "hopeful" that he would be found guilty of murder, which would require a prison term of 18 years to life, with a firearm specification. As defense counsel told the court during sentencing, during his discussions with White on the plea offer made by the state, White said, "I'll take my chances on the prior calculation and design." The record thus shows that White made a reasoned decision to concede, consistent with his confession, that he killed his wife.

IV. Waiver of Jury Trial

{¶15} White waived his right to be tried to a jury, a waiver that he concedes "may have been sufficient to waive a jury trial" under the Ohio Constitution. He maintains, however, that the jury trial waiver was insufficient under the United States Constitution. Unfortunately, apart from citing two federal cases that provide guidelines for determining the voluntariness of a jury trial waiver, White makes no independent argument, supported by facts in the record, showing why his waiver was invalid. This type of asserted but undeveloped argument does not satisfy an appellant's obligation under App.R. 16(A)(7). *State v. Ware*, 8th Dist. Cuyahoga No. 106176, 2018-Ohio-2294, ¶ 21, fn. 2. In any event, the transcript shows that the court thoroughly questioned White about his written waiver before accepting it and was satisfied that the waiver was knowingly, intelligently, and voluntarily made by White. We have no basis for finding error.

## V. Allied Offenses

{¶16} After finding White guilty of all charges, the court imposed a sentence on each count and only then merged the counts into the aggravated murder count as elected by the state. White argues that the court violated the allied offenses statute, R.C. 2941.25(A), by imposing a sentence on the counts that were to be merged.

{¶17} The state concedes that the court should not have imposed sentences on allied offenses of similar import that merged into the aggravated murder conviction. That concession is warranted on the authority of *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 17 ("A defendant may be indicted and tried for allied offenses of similar import, but may be sentenced on only one of the allied offenses."). We sustain the fifth assignment of error and, on the authority of *State v. Williams*, 148 Ohio St.3d 403, 2016-Ohio-7658, 71 N.E.3d 234, modify White's sentence consistent with the state's election of aggravated murder and vacate the sentences imposed on Counts 2, 3, and 4. *Id*. at ¶ 31-33.

{¶18} Judgment affirmed in part, modified in part.

It is ordered that appellee and the appellant share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, PRESIDING JUDGE

ANITA LASTER MAYS, J., and
KATHLEEN ANN KEOUGH, J., CONCUR